# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JOHNNIE WARREN,

        Plaintiff,

v.

Case No. 12-14850
HON. TERRENCE G. BERG

CITY OF DEARBORN, NICHOLAS ZUBOK,
JOHN NIESLUCHOWSKI, DAVID
FINAZZO, and ANDREW ZELAZNY, in
their individual capacities,

        Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DKT. 41)

Before the Court is a motion for summary judgment filed by all Defendants on September 26, 2014. (Dkt. 41.) Defendants include the City of Dearborn and Dearborn police officers Nicholas Zubok, John Niesluchowski, David Finazzo, and Andrew Zelazny. Pursuant to E.D. of Mich. L.R. 7.1(f)(2), the Court took this motion under advisement without oral argument on September 30, 2014. (Dkt. 42.) For the reasons explained below, Defendants' motion for summary judgment **IS GRANTED**.

### I. FACTUAL AND PROCEDURAL HISTORY

On the evening of November 1, 2010, Plaintiff Johnnie Warren went to Sonia Warren's home on 23035 Audette Street in Dearborn, Michigan and demanded entry. (Dkt. 41, Ex. B, p. 3.) Though Plaintiff was married to Mrs. Warren, a court order prohibited him from being at the residence when Mrs. Warren's two

daughters were present. (Dkt. 41, Ex. C, p. 12.) Since her two daughters were home that evening, Mrs. Warren demanded that Plaintiff leave. (*Id.* at p. 13.) Instead of leaving, Plaintiff punched through the plexiglass door and gained entry to the home. (*Id.* at pp. 13-14.) Once inside, Mrs. Warren alleges that Plaintiff smacked her "upside the head" and tackled her 13-year-old daughter to the floor to prevent her daughter from calling 9-1-1. (*Id.* at pp. 14, 18.)

Mrs. Warren then fled the home, fearing that Plaintiff had inhaled spray paint and was under the influence of this substance. (*Id.* at 16.) Plaintiff admits that his face and hands were covered in gold spray paint that evening, but denies being intoxicated. (Dkt. 41, Ex. F, p. 13.) He explains that he last inhaled paint two days prior to the incident, and that the paint remained on his face and hands because spray paint does not come off easily. (*Id.*)

At about 10:30 p.m., Dearborn Police Officers Nicholas Zubuk and John Niesluchowski responded to a call regarding a domestic assault and battery at Mrs. Warren's home. (Dkt. 41, Ex. A) (the emergency dispatcher informed the officers that Plaintiff's wife called "stating that her husband was assaulting her.") Upon arriving, the officers spoke with Mrs. Warren; she told them that Plaintiff had broken into her home, punched her in the head, and assaulted her daughter. (Dkt. 41 at p. 1.) The officers then entered the home and identified themselves as Dearborn police officers. (*Id.* at p. 2.) Once inside, Officer Niesluchowski saw Plaintiff sleeping on the living room couch and observed what appeared to be gold

spray paint around his mouth and nose. (*Id.*) The officers identified themselves and informed Plaintiff that he was under arrest for domestic assault and battery. (*Id.*)

A confrontation ensued. The officers claim that Plaintiff began hurling expletives at them and demanding that they leave the home. (*Id.*) After observing Plaintiff clutch an unknown item inside his left pocket, Officer Niesluchowski ordered Plaintiff to slowly remove his hand from his pocket. Plaintiff refused to comply. (*Id.*)

Concerned that Plaintiff might have a weapon, the officers attempted to physically restrain Plaintiff and forcibly remove his hand from his pocket. (*Id.* at p. 2-3.) According to the officers, Plaintiff began throwing punches at them and in the struggle they all fell to the floor. (*Id.*) With Plaintiff kicking and swinging at them, Officer Niesluchowski hit Plaintiff with numerous knee strikes and punches. (*Id.*) Still, Plaintiff kept resisting and gripping the unknown item in his left pocket. (*Id.*) Due to the degree of Plaintiff's resistance, and because the officers suspected that Plaintiff was under the influence of drugs, the officers called for back-up. (*Id.*)

Officers Zelazny and Finazzo then arrived to help place Plaintiff under arrest. Because Plaintiff continued struggling, Officer Finazzo struck Plaintiff multiple times in the arm while all four officers handcuffed him. (*Id.* at p. 4.) Even after he was handcuffed, the officers claim that Plaintiff continued resisting and

spit blood at them. (*Id.* at 4.) Plaintiff was then taken to Oakwood Hospital for evaluation and treatment. (Dkt. 41, Ex. B, p. 11.)

After his arrest, the police discovered that Plaintiff had been concealing a set of keys with a chrome cylinder key fob in his pocket. (*Id.* at p. 9.) Police also observed a can of gold spray paint inside Plaintiff's Ford Explorer along with a plastic bag covered in gold paint. (*Id.* at p. 11.) Further, officers saw gold paint on the car's steering wheel controls and on the driver and passenger seats. (*Id.*)

Plaintiff's account of the events is markedly different. According to Plaintiff, the officers arrived at his home without identifying themselves, flashed a gun in his face and then "punched him in the face with closed fists repeatedly, and kicked him in the ribs, face and legs." (Dkt. 1, p. 3.) In his pleadings, Plaintiff denies resisting arrest and instead claims that he assumed the fetal position and took a beating from the officers. (Dkt. 41, Ex. F, p. 16.) Plaintiff stated in his deposition that the beating left him with severe injuries, including:

> [a] seven-millimeter lesion on the frontal lobe of [his] brain. A broken nose. A broken cheekbone. A shattered orbital socket, orbital floor. A shattered right sinus. Five broken ribs. Two broken vertebrae. Three ruptured disks.

(*Id.* at p. 19.) While Plaintiff did not submit any medical records substantiating these injuries, it is undisputed that Plaintiff required medical treatment and was taken to the hospital after his arrest.

On February 11, 2011, Plaintiff pled guilty to one count of resisting and obstructing police and one count of domestic violence. (Dkt. 41, at p. 5.) At his plea

4

hearing, when asked whether he kicked or swung at the officers when they attempted to arrest him, Plaintiff stated "I was holding something in my hand and kind of squiggling, yes." (*Id.* at Ex. E, p. 7.) When asked at his plea hearing whether he complied with the officers, Plaintiff responded "no," admitting that he failed to comply with the officers as they attempted to arrest him. (*Id.*)

On October 31, 2012, Plaintiff brought suit against all of the officers involved as well as against the City of Dearborn. (Dkt. 1.) Plaintiff's suit consists of four counts: (1) § 1983 excessive force under the Fourth Amendment against all officers; (2) failure to adequately train officers resulting in a violation of constitutional rights against the City of Dearborn; (3) assault and battery against all officers; and (4) gross negligence by all officers. (*Id.*)

## II. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law." *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); *see also* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the

evidence, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

"As the moving parties, the defendants have the initial burden to show that there is an absence of evidence to support [plaintiff's] case." *Selhv v. Caruso*, 734 F.3d 554 (6th Cir. 2013); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the non-moving party "'may not rest upon its mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial.'" *Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012) (citing *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir.2009)).

### B. Discussion

#### 1. Given Plaintiff's Violent Resistance, the Officers' Use of Force to Effectuate an Arrest was not Unreasonable.

Claims alleging that police officers used excessive force in effectuating an arrest "should be analyzed under the Fourth Amendment and its reasonableness standard…" *Graham v. Connor*, 490 U.S. 386, 395 (1989) (internal italics and quotation marks omitted). "Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396 (internal quotation marks omitted).

The reasonableness standard "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*. at 396.

Further, the reasonableness of an officer's use of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. This is because the reasonableness inquiry must account for "the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*. at 397.

Here, the Court finds that the officers' use of force was reasonable given the circumstances. First, the record supports the officers' account of a physical altercation with Plaintiff. In this altercation, Plaintiff attempted to punch and kick the officers to prevent them from arresting him. These actions posed a direct threat to the officers' safety. In addition, while resisting, Plaintiff continued clutching an unknown object in his hand and would not let it go despite repeated orders from the officers. Plaintiff's behavior created a reasonable concern among the officers that Plaintiff might have a weapon that could pose an additional threat to their safety.

Furthermore, Plaintiff's active resistance required Officers Zubok and Niesluchowski to call for back-up from Officers Zelazny and Finazzo. Even after the

7

arrival of two more officers, Plaintiff continued resisting all four officers, leading Officer Finazzo to strike Plaintiff multiple times in order to handcuff him. In light of Plaintiff's initial physical resistance, behavior consistent with the concealment of a potential weapon, and resistance to being handcuffed, the level of force used by the officers (punches and knee strikes) was not unreasonable.

Moreover, the Court finds that Plaintiff's account of the arrest, even when viewed in the light most favorable to him, is not credible. According to Plaintiff, the police beat him while he assumed the fetal position without resisting. This version of events is in blatant contradiction to Plaintiff's own account during his guilty plea, where, when asked whether he did kick and swing at the officers, Plaintiff responded: "I was holding something in my hand and kind of squiggling, yes," and where Plaintiff further acknowledged that he did not comply with the officers when they tried to arrest him. (Dkt 41, at Ex. E, p. 7.)

Moreover, apart from his complaint, Plaintiff has provided no evidence to show that there is a genuine issue for trial here. *See Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) ("to withstand a properly supported motion for summary judgment [a plaintiff] must do more than rely merely on the allegations of [his] complaint … [a plaintiff] is obliged to come forward with specific facts, based on discovery and disclosure materials on file, and any affidavits, showing that there is a genuine issue for trial.") (internal quotation marks omitted).

Because Plaintiff's admitted conduct posed an immediate threat to the officers' safety, the Court cannot find that the officers used unreasonable force in punching and kneeing Plaintiff to effectuate his arrest. As such, summary judgment is appropriate as to Count One.

### 2. Plaintiff's Claim Against the City of Dearborn Must be Dismissed because Plaintiff Fails to Identify an Improper Practice or Policy.

Plaintiff next seeks to hold the City of Dearborn liable for failing to adequately train and or supervise its officers regarding reasonable seizures, the proper use of force, or reasonable procedures for establishing probable cause. Municipalities are not vicariously liable for the torts of their employees. *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 403 (1997). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

"However, it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404 (internal italics omitted).

Here, Plaintiff's claim fails at the starting gate because he does not identify a municipal policy or custom that caused his injury. Nowhere in his complaint or response does Plaintiff identify a questionable practice or custom of the City of Dearborn. Moreover, even if Plaintiff had identified a specific custom or practice, to impose liability on the City of Dearborn, Plaintiff also had to show a "direct causal link" between the city's action and his injury. That is, Plaintiff had to show that the city's practice directly led to his injury. Plaintiff has failed to meet this burden and as such, summary judgment is appropriate as to Count Two.

### 3. Plaintiff's State Law Claims Must Fail because the Officers are Entitled to Governmental Immunity.

Plaintiff also seeks relief on two state law claims, Count Three for assault and battery and Count Four for gross negligence. The Court has supplemental jurisdiction over these state law claims under 28 U.S.C. § 1367 because they form part of the same case or controversy as Plaintiff's federal law claims.

As a threshold matter, summary judgment is appropriate as to Count Four because Plaintiff's gross negligence claim is based on the officers' alleged use of excessive force. Under Michigan law, the only actionable cause of action for an excessive force claim is a claim for assault and battery, not gross negligence. *Bletz v. Gribble*, 641 F.3d 743, 756 (6th Cir. 2011); *see also VanVorous v. Burmeister*, 262 Mich. App. 467, 483-84 (2004) ("plaintiff's claim of gross negligence is fully premised on her claim of excessive force … this Court has rejected attempts to transform

10

claims involving elements of intentional torts into claims of gross negligence…") (internal citations omitted).

Under Count Three, Plaintiff brings a claim for assault and battery against the officers. The Defendants raise the defense of governmental immunity. In *Odom v. Wayne County*, 482 Mich. 459, 480 (2008), the Michigan Supreme Court explained that to establish governmental immunity in defense of an intentional tort claim, a defendant has the burden of showing that:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,
>
> (b) the acts were undertaken in good faith, or were not undertaken with malice, and
>
> (c) the acts were discretionary, as opposed to ministerial

Here, there is no doubt that the officers were acting during the course of their employment and within the scope of their authority. The officers were on duty when they were called to the Warren home in response to a domestic violence call. When they entered the home, they identified themselves as Dearborn Police officers and were in full police uniforms. Further, when they arrested Plaintiff, they acted within the scope of their authority as the arrest was supported by probable cause.[1] As such, the officers have met the first factor.

---

[1] Probable cause "means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1010-11 (6th Cir. 1999) (internal citation omitted). Here, the officers had

The officers have also met the second factor. The Michigan Supreme Court has held that determining the amount of force necessary to effectuate an arrest is a discretionary, not ministerial, act. *Odom*, 482 Mich. at 478.

Lastly, the officers must show that they acted in good-faith. Unlike the reasonableness inquiry for federal excessive force claims, "[t]he good-faith element of the *Ross* test is subjective in nature." *Id*. at 481. The subjective element is meant to protect "a defendant's honest belief and good-faith conduct with the cloak of immunity while exposing to liability a defendant who acts with malicious intent." *Id*. at 481-82. Malicious intent can be seen by "an intent to harm or, if not that, such indifference [as] to whether harm will result as to be equivalent of a willingness that it does." *Id*. at 474.

The Court is persuaded that the officers acted in good-faith in arresting Plaintiff. The record before the Court demonstrates that Plaintiff not only resisted arrest but vigorously fought with the officers while appearing to conceal something that the officers reasonably perceived to be a potential weapon. The Court does not minimize or fail to take into account that the officers were required to use significant force against Plaintiff and that unfortunately, Plaintiff consequently suffered serious injuries. However, there is no evidence in the record that would support a finding that the officers acted maliciously or with any intent other than to

---

probable cause to believe that Plaintiff had assaulted his wife and her daughter based on the 9-1-1 call and their conversation with Mrs. Warren prior to entering the home.

12

successfully effectuate Plaintiff's arrest. For these reasons, the Court finds that the officers have established that they did not act maliciously in using force against Plaintiff.

In sum, the Court finds that the Defendant Officers are entitled to governmental immunity. As such, Plaintiff's claim for assault and battery against the officers must fail.

### III. CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment **IS GRANTED** as to all counts. As such, Plaintiff's complaint **IS DISMISSED WITH PREJUDICE**.

**SO ORDERED.**

Dated: April 27, 2015  
s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

### Certificate of Service

I hereby certify that this Order was electronically submitted on April 27, 2015, using the CM/ECF system, which will send notification to all parties. A copy of this order was also mailed to Plaintiff's address, at 2915 Katherine St., Dearborn, MI 48124.

s/A. Chubb  
Case Manager